**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Roderick Wong, Naveen Yalamanchi, RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC,

Movants,

v.

Politan Capital Management, L.P.,

Respondent.

Case No. 1:26-mc-00528

Underlying Litigation:

*Masimo Corporation v. Joe E. Kiani, Roderick Wong, Naveen Yalamanchi, RTW Investments, LP, RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC*, No. 2:25-cv-03188-JVS-JDE (C.D. Cal.)

**Oral Argument Requested**

**MEMORANDUM OF LAW IN SUPPORT OF MOVANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD-PARTY POLITAN CAPITAL MANAGEMENT, L.P.**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 4

I. California Action Background ........ 4

II. The Parties' Positions in the California Action ........ 8

III. Overview of the Discovery Dispute ........ 10

LEGAL STANDARD ........ 13

ARGUMENT ........ 15

I. Movants Seek Critical Documents from Politan That Are Highly Relevant to Masimo's Claim in the California Action ........ 15

II. Movants Seek Discovery from Politan Proportional to the Needs of the California Action ........ 22

III. Politan Must Timely Produce Responsive Documents and Provide Detailed, Complete Information Regarding Its Collection and Review Protocol ........ 23

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaya v. Menzies Aviation USA, Inc.*,
2024 WL 5413116 (C.D. Cal. Dec. 4, 2024) ....................24

*Augenbaum v. Anson Invs. Master Fund LP*,
2025 WL 2780854 (S.D.N.Y. Sept. 30, 2025)....................16, 20

*BLST Northstar, LLC v. Atalaya Cap. Mgmt. LP*,
2024 WL 2279195 (S.D.N.Y. Mar. 12, 2024) ....................13

*Cohen v. Grp. Health Inc.*,
2022 WL 4534552 (S.D.N.Y. Sept. 28, 2022)....................13, 14, 22

*Delta Air Lines, Inc. v. Lightstone Grp., LLC*,
2021 WL 2117247 (S.D.N.Y. May 24, 2021)....................13, 23

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 544 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016)....................16, 19

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
298 F.R.D. 184 (S.D.N.Y. 2014) ....................14

*Masimo Corp. v. Kiani*,
No. 2:25-cv-03188-JVS-JDE (C.D. Cal.) ....................*passim*

*Masimo Corp. v. Politan Cap. Mgmt. LP*,
No. 8:24-cv-01568-JVS-JDE (C.D. Cal. filed July 15, 2024) ....................23

*N. Shore-Long Island Jewish Health Sys. v. MultiPlan, Inc.*,
325 F.R.D. 36 (E.D.N.Y. 2018) ....................22

*Omnicare, Inc. v. Strategic Delivery Sols., LLC*,
2021 WL 321849 (S.D.N.Y. Feb. 1, 2021)....................14

*Patagonia, Inc. v. Anheuser-Busch, LLC*,
2020 WL 6260018 (C.D. Cal. Feb. 19, 2020)....................24

*Pegoraro v. Marrero*,
281 F.R.D. 122 (S.D.N.Y. 2012) ....................14, 24

*Rubenstein v. Int'l Value Advisers, LLC*,
363 F. Supp. 3d 379 (S.D.N.Y. 2019)....................9

**Statutes**

Securities Exchange Act of 1934 § 13(d), 15 U.S.C. § 78m(d) ........................................................*passim*

Securities Exchange Act of 1934 § 13(d)(3), 15 U.S.C. § 78m(d)(3) ........................................................8

Securities Exchange Act of 1934 § 14(a), 15 U.S.C. § 78n(a) ..........................................................................9

Securities Exchange Act of 1934 § 16(a)(1), 15 U.S.C. § 78p(a)(1).......................................................2, 8

Securities Exchange Act of 1934 § 16(b), 15 U.S.C. § 78p(b)..........................................................*passim*

**Rules**

Fed. R. Civ. P. 26(b)(1) ...........................................................................................................13

Fed. R. Civ. P. 34(b)(2)(B)..............................................................................................................4

Fed. R. Civ. P. 34(b)(2)(C)......................................................................................................14, 24

Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment .....................................................14, 23

Fed. R. Civ. P. 45(a) ...............................................................................................................13

Fed. R. Civ. P. 45(c)(2)(A).........................................................................................................10

Fed. R. Civ. P. 45(d)(2)(B)(i) ...................................................................................................15

**Regulations**

17 C.F.R. § 240.13d-5(b)(1)(i) (2025)...............................................................................2, 8, 9, 15

17 C.F.R. § 240.14a-1 (2025)..............................................................................................9, 10

**Other Authorities**

Concept Release on the U.S. Proxy System, Exchange Act Release No. 62495,
75 Fed. Reg. 42982 (July 22, 2010).........................................................................................6

H.R. Rep. No. 90-1711 (1968) ..................................................................................................9

Modernization of Beneficial Ownership Reporting, 88 Fed. Reg. 76896 (Nov. 7, 2023)............................9

Movants Roderick Wong, Naveen Yalamanchi, RTW Investments, LP ("RTW"), RTW Investments GP, LLC, RTW Master Fund, Ltd., RTW Offshore Fund One, Ltd., RTW Onshore Fund One, LP, RTW Innovation Master Fund, Ltd., RTW Innovation Offshore Fund, Ltd., RTW Innovation Onshore Fund, LP, and RTW Fund Group GP, LLC (collectively, "Movants") respectfully submit this memorandum of law in support of their motion to compel (the "Motion") Politan Capital Management, L.P. ("Politan") to comply with the subpoena dated October 30, 2025, and served on November 12, 2025 (the "Subpoena"), in connection with the underlying litigation, *Masimo Corp. v. Kiani*, No. 2:25-cv-03188-JVS-JDE (C.D. Cal.) (the "California Action").

## INTRODUCTION

This Motion concerns Politan's refusal to produce highly relevant documents concerning its conduct in connection with the proxy contest at the heart of the California Action. In 2024, Politan, an activist hedge fund, waged a contentious and highly public proxy contest (the "Proxy Contest") to take control of the board of directors (the "Board") of Masimo Corporation ("Masimo"), a California-based medical technology company. Politan's campaign centered on unseating Masimo's founder, then-Chief Executive Officer, and then-Chairman of the Board, Joe Kiani. During the Proxy Contest, Politan accused Mr. Kiani and Movants of forming a Section 13(d) "group" by agreeing to vote their shares together in favor of management's slate and of engaging in an "empty voting scheme" to manipulate the shareholder vote.

After Politan's slate of director candidates won the Proxy Contest, the Politan-controlled Board caused Masimo to sue Mr. Kiani and Movants under the Securities Exchange Act of 1934 (the "Exchange Act"). Masimo's sole claim arises under Section 16(b) of the Exchange Act, which applies only to statutorily enumerated insiders—officers, directors, and "beneficial owners" of

more than 10% of an issuer's securities. 15 U.S.C. § 78p(a)(1), (b). It is undisputed that Movants were not officers or directors of Masimo, and never—collectively or individually—beneficially owned more than 10% of Masimo's securities. Masimo's claim thus hinges entirely on a theory that Movants and Mr. Kiani formed a Section 13(d) "group," which requires proof that Movants and Mr. Kiani *actually agreed* to act together to acquire, hold, vote, or dispose of Masimo securities. *See* 17 C.F.R. § 240.13d-5(b)(1)(i). In other words, the suit that the Politan-controlled Board caused Masimo to file depends on the very "group" and "empty voting" allegations Politan deployed during the Proxy Contest to campaign for its slate. Indeed, in the midst of the Proxy Contest, Politan publicly urged the Board to "determine if Mr. Kiani and RTW are a group and pursue disgorgement of any Section 16 short-swing profits"—the very claim Masimo filed once Politan's nominees took control of the Board. (Ex. B at 2.)[1]

Movants' document requests at issue here (the "Document Requests") seek: (1) documents concerning Politan's conduct surrounding the Proxy Contest, including its internal communications and its communications with Masimo, proxy advisory firms, and other investors; and (2) documents concerning Politan's development of the "group" and "empty voting" allegations Masimo now asserts.[2] Both categories go to the core of Masimo's "group" theory.

As to the first category, Masimo bases its "group" theory largely on its interpretation of RTW's communications with Mr. Kiani and others during the Proxy Contest. One of Movants'

---

[1] Exhibits cited herein ("Ex. __") are attached to the accompanying Declaration of Kaitlin D. Shapiro ("Shapiro Decl.").

[2] Movants have narrowed the scope of their requests to seek only documents related to the Proxy Contest (Request Nos. 3, 4, 5, 6, and 11) and Politan's "group" and "empty voting" allegations (Request Nos. 16, 17, 18, and 19). As discovery remains ongoing in the California Action, Movants reserve their rights to seek documents responsive to the remaining requests in the Subpoena.

core contentions is that RTW's communications did not reflect "group" conduct. Rather, RTW's behavior was consistent with the behavior of other Masimo investors, including Politan, during a particularly contentious proxy contest.

Because Politan was the dissident that waged the Proxy Contest, documents reflecting its own communications and conduct during that contest are essential to compare with, and contextualize, Mr. Kiani's and RTW's communications. That includes Politan's external communications with other market participants, as well as its internal communications that discuss, reflect, or shed light on its interactions with those participants. Movants need these documents to challenge Masimo's theory that RTW's conduct reflected an "agreement" with Mr. Kiani—the hallmark of a Section 13(d) "group"—rather than permissible engagement by a concerned shareholder that happened to support incumbent management during a proxy contest.

As to the second category, Movants need Politan's internal and external communications concerning Politan's development of the "group" and "empty voting" theories Masimo later adopted in the California Action. Movants are entitled to understand how the very party that originated the "group" accusations developed them. Those documents are crucial for Movants to test the basis for and credibility of the theories at the heart of Masimo's case.

Despite the obvious relevance of its documents, Politan—which waged the Proxy Contest and originated the allegations at the center of the California Action—insists that this dispute "has nothing to do with" it. (Ex. O at 1.) Politan refuses to produce documents essential to Movants' positions, or even to provide clarity on which categories of documents it will and will not produce. The Subpoena has been outstanding for more than eleven months, and Movants have pressed Politan for documents and clarity since early July 2026. Yet, to date, Politan has produced only 46 documents. Nearly all of these documents are news articles and public Securities and Exchange

Commission ("SEC") filings, and none contain internal Politan communications. Worse still, Politan has refused to answer Movants' repeated questions about *which Document Requests it will even respond to*, in clear violation of its fundamental obligations under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(b)(2)(B) (responding party must respond to "each item or category" of requests and to "either state that inspection and related activities will be permitted . . . or state with specificity the grounds for objecting"). Given Politan's refusal to produce responsive documents, or even to meaningfully engage with Movants regarding the Subpoena, Movants have no choice but to seek relief from this Court.

Movants therefore move to compel Politan to produce all responsive, nonprivileged documents in response to the Document Requests and to confirm in writing the custodians, data sources, search terms, and other parameters that will govern its review and production.

## BACKGROUND

### I. California Action Background

The underlying California Action centers on the Proxy Contest. (*See* Ex. F (Amended Complaint, *Masimo Corp. v. Kiani*, No. 2:25-cv-03188-JVS-JDE (C.D. Cal.), ECF No. 100) ("Am. Cplt.") ¶¶ 1–2, 32–33.) At the time, Masimo was a publicly traded medical technology company that developed, manufactured, and marketed non-invasive health monitoring technologies. (*Id.* ¶ 17.) Founded by Mr. Kiani in 1989, Masimo pioneered pulse-oximetry technology that enables clinicians to detect potentially life-threatening events through the non-invasive measurement of a patient's pulse and blood-oxygen saturation. (*See id.* ¶¶ 17–18.)

RTW is an SEC-registered investment adviser dedicated to investing in health care companies on behalf of its affiliated funds. RTW initially invested in Masimo at the time of Masimo's initial public offering and remained a long-term investor thereafter. RTW's principals

themselves hold Doctor of Medicine degrees. Dr. Roderick Wong is RTW's founder, Managing Partner, and Chief Investment Officer, and Dr. Naveen Yalamanchi is a Partner and Portfolio Manager at RTW. (Am. Cplt. ¶¶ 19–20, 37.) RTW's long-term Masimo investment was inspired by and reflected its faith in management's leadership and vision for Masimo. Movants are the defendants in the California Action.[3] Movants include RTW, Dr. Wong, Dr. Yalamanchi, various funds for which RTW serves as investment adviser, and those funds' general partners. (*Id.* ¶¶ 19–29.)

Politan is an activist hedge fund founded in 2021 and led by Quentin Koffey, who serves as its Managing Partner and Chief Investment Officer. Politan has a documented track record of pursuing fundamental changes in target companies, which, at times, has diminished the value of those target companies. In early 2022, Politan began acquiring Masimo stock, and by August 16, 2022, Politan disclosed that it had acquired approximately $750 million worth of Masimo stock. At Masimo's June 2023 annual meeting, following a proxy contest, Politan secured seats on the Board for Mr. Koffey and Michelle Brennan, another Politan-nominated director. (*See* Am. Cplt. ¶ 31; Ex. C at 15.)

Beginning in March 2024, Politan waged the acrimonious Proxy Contest, through which it sought two additional Board seats to oust Mr. Kiani and to take control of the Board. (*See* Am. Cplt. ¶¶ 2, 32–33.) The contest was bitterly fought: each side accused the other of dishonesty. (*See* Ex. B at 2; Ex. C at 21–22; Ex. D at 1.)

Two letters Politan sent to the Board, and made public, during the Proxy Contest reflect Politan's central role in formulating the allegations at issue in the California Action. (Exs. A, B;

[3] Mr. Kiani was originally named as a defendant in the California Action, but he was voluntarily dismissed without prejudice on August 4, 2025. *See* California Action, ECF No. 194.

*see also* Am. Cplt. ¶¶ 70–71.) In its July 3, 2024 letter, Politan accused an unnamed "investor who is a friend of Mr. Kiani" of a "possible ongoing scheme to manipulate the outcome" of the annual meeting through "empty voting," and asked the Board to set a new record date and to investigate Mr. Kiani's contacts with that investor. (Ex. A at 1.) Nine days later, Politan identified RTW as that investor. (Ex. B at 1.) Politan further accused RTW and Mr. Kiani of an "empty voting scheme," renewed its demand for a new record date, and urged the Board to hire independent counsel to "determine if Mr. Kiani and RTW are a group and pursue disgorgement of any Section 16 short-swing profits." (*Id.* at 1–2.) As Politan described it, the "empty voting" consisted of RTW purchasing Masimo shares to hold on the record date—increasing its voting power to 9.9%—while simultaneously borrowing and shorting an equivalent number of shares to eliminate its economic exposure. (*See* Exs. A, B.)[4]

On August 15, 2024, Masimo publicly refuted Politan's allegations in a statement filed with the SEC:

> Mr. Kiani does not currently, nor has he ever had, any agreement, arrangement, understanding, relationship or otherwise, with RTW or any of its affiliates, pursuant to which such person has or shares voting or investment power pertaining to any shares of Masimo common stock held, beneficially or otherwise, by Mr. Kiani or any of his affiliates or any shares that may be held by any RTW Funds.

(Ex. C at 24; *see also* Am. Cplt. ¶ 75.) Masimo issued that statement after investigating Mr. Kiani's relationship with RTW in response to Politan's letters. (Ex. C at 24.) Weeks later, on September 6, 2024, Masimo went further, publicly stating in an SEC filing that "evidence produced by Politan

[4] No statute or rule prohibits a shareholder from voting the shares it holds on the record date simply because it has hedged its economic exposure to those shares. Indeed, the SEC acknowledges that "empty" or "boxed" voting by long shareholders is legal. *See Concept Release on the U.S. Proxy System*, Exchange Act Release No. 62495, 75 Fed. Reg. 42982, 43017 n.313 (July 22, 2010).

in litigation shows that Politan and its public relations team conceived of this 'empty voting' issue in early July 2024 as another false narrative to be employed in Politan's effort to take control of Masimo." (Ex. D at 1.)

At Masimo's September 19, 2024 annual meeting of stockholders (the "Shareholder Vote"), Politan's nominees won election to the Board, giving Politan-nominated directors majority control of the Board. (Ex. E.) Shortly thereafter, Masimo reversed its position and disavowed its prior statements regarding the absence of a group between Movants and Mr. Kiani. (*See* Am. Cplt. ¶¶ 13, 78.)

On October 25, 2024, Masimo sued Mr. Kiani and Movants in the United States District Court for the Southern District of New York, which later transferred the case to the Central District of California. (*See* Shapiro Decl. ¶¶ 8–9.) Unsurprisingly, given Politan's control of the Board at that time, Masimo's allegations in the California Action largely mirror Politan's allegations in its campaign letters. Those allegations include that RTW engaged in "empty voting," that Mr. Kiani and certain RTW principals share a personal friendship, and that RTW and Mr. Kiani coordinated their voting of Masimo securities. (*See* Am. Cplt. ¶¶ 4, 10, 36–37, 59, 70, 88, 117.) Notably, Masimo's counsel in the California Action was, and remains, the *very same counsel* that represented *Politan* during the Proxy Contest, and the same counsel that continues to represent Politan in connection with the Subpoena. (Shapiro Decl. ¶ 9.)

In other words, once Politan's nominees controlled the Board, Masimo sued Movants—through Politan's own Proxy Contest counsel—on the very allegations and theories that Politan had "conceived of" and that Masimo, only weeks earlier, had strenuously denied and called a "false narrative" in documents filed with the SEC. (Ex. D at 1.)

## II. <u>The Parties' Positions in the California Action</u>

Masimo's sole claim in the California Action seeks disgorgement of alleged "short-swing profits" under Section 16(b) of the Exchange Act. (*See* Am. Cplt. ¶¶ 104–10, 122–29.) Under Section 16(b), a greater than 10% beneficial owner of a company's stock who earns "short-swing" profits by trading within a six-month period may be required to disgorge those profits to the company. The policy behind the statute is to prevent certain statutory insiders—specifically, directors, officers, and beneficial owners of more than 10% of a class of the company's equity securities—from trading on the basis of inside information. *See* 15 U.S.C. § 78p(a)(1). To prevail, Masimo must therefore first establish that each Movant was an "insider" subject to Section 16(b).

It is undisputed that Movants were never Masimo officers or directors and never beneficially owned more than 10% of Masimo's stock, whether individually or collectively. (*See* Am. Cplt. ¶¶ 3–4, 104.) Masimo's claim instead hinges entirely on its theory that Movants formed a so-called "group" with Mr. Kiani under Section 13(d) of the Exchange Act, such that Movants' and Mr. Kiani's holdings may be combined to exceed the 10% threshold. (*See id.* ¶¶ 104, 124–25.)

A Section 13(d) "group" requires a knowing and voluntary agreement among its purported members. Under the statute, "[w]hen two or more persons act as a *partnership*, *limited partnership*, *syndicate*, *or other group* for the purpose of acquiring, holding, or disposing of securities of an issuer, such . . . group shall be deemed a 'person.'" 15 U.S.C. § 78m(d)(3) (emphasis added). Consistent with that language, the implementing regulation and legislative history make clear that a group is formed only when persons "agree to act together," such as through "contract[s], understanding[s], relationship[s], agreement[s], or other arrangement[s]." 17 C.F.R. § 240.13d-5(b)(1)(i) (2025); *see also, e.g.*, H.R. Rep. No. 90-1711, at 8–9 (1968), *as*

*reprinted in* 1968 U.S.C.C.A.N. 2811, 2818 (emphasis added) ("The group would be deemed to have become the beneficial owner . . . at the time [t]hey *agreed to act in concert*."); *Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 390 (S.D.N.Y. 2019) (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 124 (2d Cir. 2001)) ("the operative question . . . is whether the parties 'agree[d] to act together for the purpose of acquiring, holding, voting or disposing of . . . stock'"), *aff'd*, 959 F.3d 541 (2d Cir. 2020); Modernization of Beneficial Ownership Reporting, 88 Fed. Reg. 76896, 76933 (Nov. 7, 2023) (SEC reaffirmed that "[i]f two or more persons took similar actions, that fact is not conclusive in and of itself that a group has been formed").

Masimo must therefore prove that Movants and Mr. Kiani intentionally agreed to act in concert to acquire, hold, vote, or dispose of Masimo securities. Masimo bases its "group" theory on RTW's support for Masimo's incumbent slate of directors—which included Mr. Kiani—in the Proxy Contest. To support its theory, Masimo points to the content, timing, and frequency of communications between one of RTW's partners, Dr. Yalamanchi, and Mr. Kiani, including through text messages and phone calls, in advance of the record dates and the Shareholder Vote. (Am. Cplt. ¶¶ 5, 48, 78, 91–92.)

Movants' position is straightforward: RTW's decision to support management's slate during the Proxy Contest did not create a Section 13(d) group between Movants and Mr. Kiani. Nor did RTW's communications with Mr. Kiani and other Masimo representatives during that contest reflect the "agreement" a Section 13(d) group requires. Rather, RTW's communications reflect the types of exchanges that commonly occur between an issuer's management, acting on the issuer's behalf, and institutional investors like RTW. Such communications are typical in proxy contests and permissible under the federal proxy rules. *See* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-1 (2025). Discovery into how other participants in the Proxy Contest—and above all

Politan—behaved and communicated with Masimo, proxy advisors, and investors during that contest is therefore crucial to Movants' position that no agreement, and thus no group, ever existed.

### III. Overview of the Discovery Dispute

On November 12, 2025, Movants served the Subpoena on Politan through its registered agent. (Ex. G.) The Subpoena was issued by the United States District Court for the Central District of California. (*Id.*) Politan's principal place of business is 106 West 56th Street, 10th Floor, New York, New York 10019, well within 100 miles of the place of compliance listed in the Subpoena—Movants' then-counsel's New York City office. (*See* Exs. A, B, G.) New York is therefore the proper place of compliance with the Subpoena. *See* Fed. R. Civ. P. 45(c)(2)(A).

Among other things, the Subpoena seeks: (1) Politan's internal and external communications regarding the Proxy Contest, particularly with Politan's limited partners, Masimo, proxy advisors, and other Masimo shareholders (Request Nos. 3–6, 11); and (2) documents and communications concerning Politan's allegations in its campaign letters, including any investigations by Politan into alleged violations of Section 13 or Section 16 of the Exchange Act (Request Nos. 16–19). (*See* Ex. G, App'x B.)

On December 17, 2025, Politan served formal written objections and responses in which it flatly refused to produce documents in response to all but six of Movants' twenty-one document requests. (Ex. H.) For those six requests (Document Request Nos. 3–5 and 16–18), Politan produced no documents but left open the possibility of meeting and conferring "regarding the scope" of the requests. (*See, e.g.*, *id.* at 12, 23–24.) Further, despite Politan's extensive involvement in the Proxy Contest, it asserted that it "had no involvement in the key issues in this case." (*Id.* at 3–4.)

On July 6, 2026, Movants, through their counsel, sent Politan a letter addressing its responses and requesting a meet and confer. (Ex. I.) In a July 15, 2026 email, Politan represented that its document review was already underway based on the custodial files of Mr. Koffey and Aaron Kapito—the two individuals Politan identified as custodians—but stated that it did not yet have an anticipated date for production. (Ex. J at 12; *see also* Ex. O at 4.) Politan did not disclose the search terms or other parameters that it was using for its review, nor did it identify the Document Requests for which it actually planned to review and produce responsive documents. At the July 23, 2026 meet and confer—the first following Movants' July 6 letter—Politan continued to dispute the relevance of its documents and refused to commit to a production timeline. (*See* Ex. M at 1, 4.) Politan provided its search terms and an initial hit report for the first time the following day. (Ex. L.)

On August 3, 2026, Movants again responded to Politan's concerns in writing, explaining why Politan's documents are relevant, identifying Politan's role in formulating Masimo's allegations, requesting that Politan provide a date for its production, and providing additional proposed search terms for Politan's review. (Ex. M at 1–6; Ex. J at 9.)

On August 4, 2026, Politan informed Movants that it would produce documents on September 2, 2026, but failed to address any of the other issues raised in Movants' letter or confirm that its production would be substantially complete by September 2. (Ex. J at 8.) Nor did it confirm that its production would cover all requests, custodians, or data sources. (*Id.*)

On August 6, 2026, Movants requested another meet and confer to confirm the Document Requests for which Politan would search for and produce documents. (Ex. J at 7–8.) After follow-up correspondence, the parties again met and conferred on August 18, 2026. (*Id.* at 2–4.) Less than fifteen minutes before that meeting, Politan provided an updated hit report reflecting the

additional search terms Movants had requested. (Ex. N; Ex. P at 5.) During the meet and confer, Politan confirmed that it would review all documents that hit on those terms. (Ex. J at 3.) However, Politan *still* did not confirm, either in writing or during the meet and confer, the Document Requests for which it would produce responsive documents. Nor did it identify the Document Requests for which it would refuse to produce documents on the basis of its objections, including its relevance objections.

On August 21, 2026, Movants sent Politan an email memorializing the meet and confer and identifying the remaining issues. These issues included: (1) Politan's failure to confirm all search sources and custodians; (2) its failure to identify the Document Requests for which it would produce responsive documents; and (3) the need for a production schedule. (Ex. J at 1–4.)

On August 26, 2026, after weeks of correspondence and two meet and confers, Politan provided its first formal written response to Movants' July and August letters, in which it *still* refused to specify the Document Requests for which it would produce responsive documents or confirm a production protocol. (Ex. O.) Instead, Politan unilaterally announced that it would produce only its "communications with Masimo, proxy solicitors, and proxy advisory firms" concerning what it deemed "the key issues in this case": "the empty voting allegations and investigation concerning the same, coordination between Kiani and RTW, and the record date for the 2024 annual meeting." (*Id.* at 3–4.) That self-selected scope excludes a wide swath of documents demanded by Movants' Document Requests, including Politan's communications regarding the Proxy Contest and Shareholder Vote, Politan's internal communications, its communications with its limited partners, and its communications with other Masimo shareholders.

On September 2, 2026, Politan made its first—and, to date, only—production, consisting of just 46 documents, largely news articles and publicly available SEC filings. (Ex. P at 9.)

On September 18, 2026, Movants sent Politan a letter identifying numerous deficiencies in the production and demanding that, by September 25, 2026, Politan state, for each Document Request, whether it would produce responsive documents and whether it was withholding any materials on the basis of its objections. (Ex. P at 11–12.) Politan did not respond. On October 5, 2026, Movants followed up by email, requested a response to their letter, and advised Politan that Movants would seek relief from the Court if Politan failed to respond. (Ex. Q at 1.) To date, despite the assurance in Politan's August 26 letter that the parties could discuss any remaining deficiencies "in good faith" after its production, Politan has failed to respond. (*See* Ex. O at 4.) This Motion followed.

## LEGAL STANDARD

Parties may subpoena relevant information from non-parties under Federal Rule of Civil Procedure 45. Specifically, "[f]ederal Rule of Civil Procedure 45 permits a party to command a non-party to produce documents[.]" *Cohen v. Grp. Health Inc.*, 2022 WL 4534552, at *2 (S.D.N.Y. Sept. 28, 2022) (citing Fed. R. Civ. P. 45(a)). "Motions to compel compliance with Rule 45 subpoenas are governed by the relevancy and proportionality guidelines of Rule 26." *BLST Northstar, LLC v. Atalaya Cap. Mgmt. LP*, 2024 WL 2279195, at *3 (S.D.N.Y. Mar. 12, 2024) (quoting *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021)), *report and recommendation adopted*, No. 24-MC-66 (GHW) (RWL) (S.D.N.Y. Mar. 27, 2024).

Rule 26(b)(1) permits discovery of any nonprivileged matter that "is relevant to any party's claim or defense and proportional to the needs of the case," and information "need not be

admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevance "is an extremely broad concept." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)). There is a "'relatively low threshold' for a party to show that the material sought is relevant to any claim or defense in the litigation." *Id.* (quoting *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 421 (E.D.N.Y. 2007)). The same relevance standards apply to discovery sought from non-parties through subpoenas issued under Rule 45. *See Omnicare, Inc. v. Strategic Delivery Sols., LLC*, 2021 WL 321849, at *2 (S.D.N.Y. Feb. 1, 2021) (granting motion to compel compliance with Rule 45 subpoena) ("This Court need only decide if Omnicare's subpoena seeks relevant information and is not overbroad or burdensome in violation of Rule 26, Fed. R. Civ. P.").

The party seeking discovery bears the initial burden of showing that the information sought is relevant and proportional to the needs of the case. *Cohen*, 2022 WL 4534552, at *2. The burden then shifts to the party opposing discovery to substantiate any claim of privilege, protection, or undue burden. *Id.* In evaluating burden, courts consider the relevance of the information sought, the requesting party's need for it, the breadth of the request, and the burden imposed. *Id.*

A party objecting to a subpoena must "state whether any responsive materials are being withheld on the basis of that objection," and, if it objects to part of a request, must "specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C); *see* Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); *Pegoraro v. Marrero*, 281 F.R.D. 122, 132 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 34(b)(2)(B)) ("The responding party must either produce documents sought in each request or 'state an objection to the request, including the reasons.'").

If a subpoenaed non-party objects, the serving party "may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Because the Subpoena designates New York, New York as the place of compliance, this Court is the proper forum for this Motion. *See* Ex. G. Politan agrees. *See* Ex. H at 3 ("[T]he proper court for any enforcement of compliance with the Subpoena is the United States District Court for the Southern District of New York."); Ex. O at 5.

## ARGUMENT

### I. Movants Seek Critical Documents from Politan That Are Highly Relevant to Masimo's Claim in the California Action

Each of the Document Requests seeks information highly relevant to Masimo's claim in the California Action. Broadly, Movants seek Politan's records—both its internal communications and its communications with third parties—to establish the types of communications and conduct in which Politan engaged during the Proxy Contest. Politan's records are particularly probative because Politan instigated the Proxy Contest against the incumbent Board members. Evidence that Politan and other investors engaged in similar kinds of communications as RTW is relevant to rebutting Masimo's claim that only RTW's communications and conduct—and apparently not Politan's or any other investor's—were indicative of an "agree[ment] to act together for the purpose of acquiring, holding, voting or disposing of equity securities of" Masimo. 17 C.F.R. § 240.13d-5(b)(1)(i). Movants specifically seek Politan's internal communications to understand how Politan itself understood and characterized both its own and RTW's conduct during the Proxy Contest.

Relatedly, Politan's communications are relevant to establishing what constitutes "standard industry practice" in the context of a proxy contest. That inquiry is directly relevant to RTW's

position in the California Action, because Masimo's "group" theory depends on characterizing ordinary proxy-contest engagement—communicating with management, proxy advisors, and other investors—as evidence of an agreement. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 553 (S.D.N.Y. 2014) (finding "standard industry practice" relevant in determining whether a "Section 16(b) group" existed), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016).

The records Movants seek are relevant to whether Politan's own conduct during the Proxy Contest mirrored the conduct that Masimo characterizes as "group" behavior. For example, in Politan's only production to date—just 46 documents—Movants have seen indications that other investors were communicating with Masimo and echoing the allegations put forth by Politan. This suggests that Politan communicated with other investors in connection with the Proxy Contest. Any communications in which Politan discussed its proposed director slate with other investors, especially shortly before those investors communicated with Masimo, demonstrate the types of exchanges and viewpoint-sharing that occurred during Politan's contested proxy campaign. *See Augenbaum v. Anson Invs. Master Fund LP*, 2025 WL 2780854, at *10 (S.D.N.Y. Sept. 30, 2025) (holding that if conduct is "standard practice in the industry, a jury could find that [it] do[es] not imply group formation"). These communications provide key context for RTW's own communications.

Separately, Movants also seek Politan's communications showing how it conceived of and developed the allegations in its July 2024 letters that RTW and Mr. Kiani colluded in an "empty voting" scheme. These are the same allegations Masimo contemporaneously and publicly rejected as a "false narrative" before adopting them as the basis for its lawsuit once Politan's takeover was complete. *See* Exs. A, B, D. Because Politan's designees controlled the Board when Masimo filed

suit, Politan's documents bear on how and why Masimo reversed its public position and embraced Politan's theories. These communications are highly relevant to Movants' ability to attack the origin and credibility of the allegations and legal theories at the core of Masimo's case.

Masimo's own allegations reinforce the relevance of Politan's communications. Masimo's "group" theory rests heavily on RTW's alleged interactions with the very same market participants with whom Politan communicated throughout the Proxy Contest—most notably, the proxy advisory firm Glass Lewis & Co. ("Glass Lewis") and Masimo's strategic advisor in the contest, Alpha Lavin Advisors. (Am. Cplt. ¶¶ 6, 49, 59–62, 79–80, 117.) Politan's communications with those same participants and with other Masimo shareholders thus directly reflect on whether activities such as lobbying proxy advisors and canvassing large holders are ordinary features of a contested proxy campaign rather than hallmarks of a Section 13(d) "group."

Masimo further alleges that Mr. Kiani shared certain information with RTW, including a draft Masimo press release, and that such sharing reflects furtherance of the alleged group. (Am. Cplt. ¶¶ 43–45, 47, 52, 62, 116.) Communications showing whether Politan received information about Masimo during the Proxy Contest—through its Board designees or otherwise—are highly relevant to testing Masimo's theory that these allegations, if proven, reflect an intent to form a Section 13(d) "group."

Finally, the Amended Complaint relies on Politan's July 3, 2024 letter to the Board, Masimo's private response to Politan, and purported deficiencies in the Board's investigation of Politan's allegations. (Am. Cplt. ¶¶ 70–72, 77–78.) Politan's communications with Masimo bear directly on the provenance of these allegations, the information Politan supplied to Masimo, and how Masimo came to disavow its own prior public statements that no agreement existed between

Mr. Kiani and RTW. All of that is directly relevant to Masimo's "group" theory and claim against RTW.

Each of the specific Document Requests is relevant for additional reasons, as set forth below.

**Request No. 3 (Limited Partners).** Request No. 3 seeks communications between Politan (or its officers, directors, or board members) and Politan's limited partners concerning Masimo, the Proxy Contest, the Shareholder Vote, Movants, or Mr. Kiani. Those communications bear on what Politan knew, when it knew it, and how it privately described the Proxy Contest and its "group" allegations against RTW to its own investors. Any differences between Politan's private descriptions and its public accusations are directly relevant to the credibility of Masimo's "group" theory. The request is confined to the identified subjects, and Movants seek enforcement only for a reasonable time period tied to the Proxy Contest, i.e., January 1 through December 31, 2024—the same date range Politan itself used for its review. (*See* Ex. L.)

**Request No. 4 (Masimo Communications).** Request No. 4 seeks Politan's communications with Masimo relating to: (1) the Proxy Contest, (2) the Shareholder Vote, (3) Movants, or (4) Mr. Kiani. These communications are probative of the timing and factual basis of Masimo's allegations, what Politan communicated to Masimo, and how Masimo came to rely on allegations originally formulated by Politan to sue Movants. They are therefore relevant to Movants' position that Masimo's claim rests on Politan's campaign rhetoric—which Masimo itself contemporaneously rejected an SEC filing as a "false narrative"—rather than on any independent evidence of an agreement between RTW and Mr. Kiani. (*See* Ex. D at 1.) These communications are also relevant to RTW's position that its communications with Masimo during the Proxy Contest were not materially different in kind from those of Politan and other investors. Indeed, these

communications are relevant to showing the kind of shareholder engagement and viewpoint sharing with management that is typical during a proxy contest, rather than "group" conduct.

**Request No. 5 (Participation in the Proxy Contest and Shareholder Vote).** Request No. 5 seeks documents concerning Politan's participation in the Proxy Contest and the Shareholder Vote, including its internal strategy communications and communications with other investors. This information bears on the manner of Politan's participation and provides a concrete comparison to RTW's own conduct, which Masimo claims reflects "group" behavior. For example, evidence that Politan communicated or met with shareholders to lobby for its director slate is relevant to RTW's contention that such communications are a standard feature of a proxy contest, not evidence of a "group." The request is limited to Politan's conduct during the Proxy Contest.

**Request No. 6 (Proxy and Investor-Relations Firms).** Request No. 6 seeks communications with Glass Lewis, Institutional Shareholder Services ("ISS"), Alpha Lavin Advisors, Innisfree M&A ("Innisfree"), and other proxy advisory, proxy solicitation, or investor-relations firms concerning the Proxy Contest, the Shareholder Vote, Movants, or Mr. Kiani. Those communications bear on the mechanics of Politan's solicitation, the information on which Politan relied, and the extent of its contacts with market participants. Because Masimo relies on RTW's contacts and communications with Glass Lewis and Alpha Lavin as evidence of a "group," Politan's contacts and communications with those same firms are relevant to Masimo's claim. (Am. Cplt. ¶¶ 6–7, 49, 79–81); *see also In re Facebook*, 986 F. Supp. 2d at 553. Politan's own dealings with Glass Lewis are particularly probative. For example, Masimo disclosed that, on July 9, 2024, Politan paid Glass Lewis to host a "Proxy Talk" webinar. (Ex. C at 23.) Two days later,

Glass Lewis recommended Politan's nominees in a report that described RTW's outreach to Glass Lewis—a report Politan then invoked against RTW. (*Id.*; Ex. B.)

**Request No. 11 (Other Masimo Shareholders).** Request No. 11 seeks communications between Politan (or its officers, directors, or board members) and other Masimo shareholders concerning the Proxy Contest, the Shareholder Vote, Movants, or Mr. Kiani. These communications bear on how Politan solicited, coordinated with, and exchanged information with other shareholders, and on whether, in its own campaign, Politan engaged in the type of conduct and communications that Masimo now characterizes as evidence of a "group." That evidence goes directly to Masimo's claim—in particular, it bears on whether RTW's own communications and conduct truly constituted "group" behavior, or simply reflected the same behavior Politan and other investors engaged in. *See Augenbaum*, 2025 WL 2780854, at *10. The request is limited to Masimo shareholders and the identified subjects; it does not seek Politan's unrelated business communications or solicitations.

**Request No. 16 (Empty-Voting Allegations).** Request No. 16 seeks documents relating to Politan's allegations in its July 3 and July 12, 2024 letters to the Board that Mr. Kiani and RTW engaged in an "empty voting scheme" to "manipulate the outcome" of the Shareholder Vote. Those materials bear on the factual sources, timing, analyses, and communications underlying Politan's allegations and how those allegations were developed and conveyed to Masimo. They are therefore directly relevant to the truthfulness, credibility, and factual basis of the allegations that Masimo later adopted in the California Action. (*See* Am. Cplt. ¶¶ 70–71.) Masimo itself publicly stated that "evidence produced by Politan in litigation shows that Politan and its public relations team conceived of this 'empty voting' issue in early July 2024 as another false narrative," and

Movants are entitled to test that account against Politan's own records. (Ex. D at 1.) The request is confined to the identified allegations and does not seek unrelated Politan business records.

**Request No. 17 (Investigation Allegations).** Request No. 17 seeks documents relating to Masimo's allegations in the Amended Complaint that Masimo's investigations into Politan's July 2024 allegations against Mr. Kiani and "RTW Investments" were "deficient." (*See* Am. Cplt. ¶ 77.) Those materials bear on what Politan knew about the investigations, what information it supplied or received, and the factual basis, if any, for the contention that the investigations were inadequate. That inquiry is especially important because Masimo's contemporaneous investigation, undertaken in response to Politan's letters, concluded that Mr. Kiani had no agreement, arrangement, or understanding with RTW concerning voting or investment power over Masimo shares. (Ex. C at 24.) Evidence bearing on whether the investigations were reasonable, or whether Politan had any factual basis to call them deficient, is directly relevant to a central pillar of the Amended Complaint.

**Request No. 18 (Demands to Postpone).** Request No. 18 seeks documents relating to Politan's demands, in its July 3 and July 12, 2024 letters to the Board, that Masimo postpone the record date and the Shareholder Vote. Those materials bear on the chronology of events, Politan's contemporaneous understanding of the alleged voting issues, and the factual basis for, and urgency of, the relief Politan sought. They are also relevant to whether Politan's demands rested on any actual evidence of an agreement between RTW and Mr. Kiani or were instead a tactic to gain leverage in the Proxy Contest—a question that goes directly to the provenance of Masimo's claim.

**Request No. 19 (Sections 13 or 16 Investigations).** Request No. 19 seeks documents relating to any internal or external investigation conducted by or at the direction of Politan concerning Movants or Mr. Kiani in connection with Section 13 or Section 16 of the Exchange

Act. Those materials bear on what information Politan possessed or received concerning the conduct at issue in Masimo's claim and the factual basis for Masimo's allegations concerning Sections 13 and 16. Whether any such investigation uncovered evidence of an agreement between RTW and Mr. Kiani is highly relevant to whether a Section 13(d) "group" ever existed. The request is confined to investigations concerning Movants or Mr. Kiani and does not seek unrelated investigations or Politan's general business records.

In short, the documents Movants seek from Politan in response to each of these Document Requests are highly relevant: they concern facts "of consequence in determining the action" and are properly the subject of third-party discovery. *N. Shore-Long Island Jewish Health Sys. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018).

## II. Movants Seek Discovery from Politan Proportional to the Needs of the California Action

Politan cannot show that compliance with the Subpoena would be unduly burdensome, nor has it ever articulated any specific burden. *See Cohen*, 2022 WL 4534552, at *2. Politan has not objected to the review population generated by the agreed search terms, and it has already agreed to review every document that hits on those terms—it just has not clearly explained what it will actually *produce*, beyond an unreasonably narrow subset that does not come close to satisfying the Document Requests. (*See* Background Section III; Ex. J at 3; Ex. O at 3–4.) As such, Politan has no credible burden argument.

In addition, even if Politan did and could raise a burden argument, any such argument is tempered by the fact that Politan is a non-party in name only. Politan's Managing Partner and Chief Investment Officer, Quentin Koffey, sat on the Masimo Board as Politan's representative throughout the relevant time period. (*See* Ex. C at 15; Ex. M at 2.) Directors hand-picked by

Politan controlled the Masimo Board when the California Action was filed. (*See* Exs. C, E.) The Amended Complaint's allegations closely track those Politan contrived and asserted in its July 2024 letters—letters in which Politan itself urged the Board to pursue Section 16 disgorgement from RTW. (*See* Ex. B at 2.) Politan and Masimo are also represented by the very same counsel, so Politan's counsel is already intimately familiar with the facts and documents at issue. (*See* Shapiro Decl. ¶ 9.) And Politan has already reviewed and produced documents concerning the Proxy Contest in separate litigation with Masimo. *See Masimo Corp. v. Politan Cap. Mgmt. LP*, No. 8:24-cv-01568-JVS-JDE (C.D. Cal. filed July 15, 2024); Ex. C at 25; Ex. D at 1 (citing "evidence produced by Politan in litigation"). Under these circumstances, responding to the Subpoena will not unduly burden Politan. *See Delta*, 2021 WL 2117247, at *2 (compelling production where the documents were highly relevant and the subpoena was not overbroad).

Even though Politan is no ordinary non-party, Movants have worked to minimize any burden on Politan. Movants now seek production in response to just nine Document Requests, each tied to the Proxy Contest, Politan's July 2024 letters and related allegations, or investigations of Movants or Mr. Kiani under Section 13 or Section 16 of the Exchange Act. Movants have also confined the requested search period to January 1 through December 31, 2024, and proposed search terms that Politan has accepted. (*See* Ex. L; Ex. N; Ex. J at 3.) Politan therefore has no credible burden argument, and the discovery Movants seek is proportional to the needs of the case.

## III. Politan Must Timely Produce Responsive Documents and Provide Detailed, Complete Information Regarding Its Collection and Review Protocol

Movants have attempted to engage with Politan regarding its production in response to the Subpoena since early July 2026. Yet Politan has produced only 46 documents. Worse still, despite repeated requests and multiple meet and confers, Politan has refused to confirm the Document

Requests for which it will produce documents, violating its basic discovery obligations. *See* Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."); *Pegoraro*, 281 F.R.D. at 132 (quoting Fed. R. Civ. P. 34(b)(2)) ("The responding party must either produce documents sought in each request or 'state an objection to the request, including the reasons.'"). Without a timely order from this Court clarifying the scope of Politan's review and production, Movants will have no meaningful time to review the production, identify deficiencies, pursue follow-up discovery, or prepare witnesses.

Moreover, the time is long past for Politan to commit to a date for completing its production. Courts routinely reject a party's refusal to commit to a reasonable production date and have ordered production where a party failed to provide any deadline. *See Patagonia, Inc. v. Anheuser-Busch, LLC*, 2020 WL 6260018, at *2 (C.D. Cal. Feb. 19, 2020) (rejecting argument that a party was "unable to commit to a reasonable date for production" and ordering production); *Amaya v. Menzies Aviation USA, Inc.*, 2024 WL 5413116, at *5 (C.D. Cal. Dec. 4, 2024) (ordering production where a party failed to provide "any deadline by which it will finish combing through its records and complete its search for responsive documents").

Nor can Politan credibly contend that this Motion is premature. Despite diligent inquiry from Movants' counsel, Politan for months has refused to confirm even the basic parameters of its review: which Document Requests it is treating as within scope, what criteria it is applying to determine responsiveness, and when its production will be complete. Politan's September 2, 2026 production only heightens these concerns. Of the 46 documents produced, the vast majority were

news articles and publicly available SEC filings rather than the substantive internal and external communications the Subpoena seeks. (Ex. P at 9.) Yet Politan's own hit report reflects 26,089 documents that hit on the agreed search terms. (Ex. N.) Movants raised these deficiencies in their September 18 letter and October 5 follow-up email, but Politan has responded to neither. Absent an order from this Court, Movants have no way to know what Politan is doing or whether its review will satisfy the Subpoena.

Accordingly, the Court should compel Politan to produce all documents and communications in its possession, custody, or control that are responsive to the Document Requests. Politan should also be required to provide Movants with a complete written explanation of all custodians, data sources, search terms, date ranges, and hit counts used for its collection and review. The Court should also order Politan to substantially complete its rolling production within twenty-one days of the Court's order.

## CONCLUSION

Because the requested discovery is relevant, proportional, and appropriately limited, Movants respectfully request that the Court order Politan to: (1) search for and produce all nonprivileged documents within its possession, custody, or control that are responsive to Document Request Nos. 3–6, 11, and 16–19, using the search terms agreed upon by the parties and any additional narrowly tailored terms reasonably necessary to capture those requests, within the agreed search period of January 1 through December 31, 2024; (2) identify the custodians, data sources, search terms, date ranges, and hit counts used for its collection and review; and (3) substantially complete its rolling production within twenty-one days of the Court's order. Movants further request that the Court grant such other and further relief as it deems just and proper.

Dated: October 26, 2026
New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

/s/ *Kaitlin D. Shapiro*________________

Douglas A. Rappaport
Kaitlin D. Shapiro
Richard J. D'Amato
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
darappaport@akingump.com
kshapiro@akingump.com
rdamato@akingump.com

*Attorneys for Movants*

**MEET AND CONFER CERTIFICATION**

I hereby certify that Movants and Politan met and conferred in good faith regarding Politan's Objections and Responses to the Subpoena on July 23, 2026 and August 18, 2026. Movants attempted to address outstanding discovery issues following Politan's September 2, 2026 production through a letter dated September 18, 2026. On October 5, 2026, Movants advised Politan that they would be forced to seek relief from the Court if Politan did not respond to the issues raised in Movants' September 18 letter. To date, Movants have not received a response from Politan.

Dated: October 26, 2026
New York, New York

/s/ *Kaitlin D. Shapiro*
Kaitlin D. Shapiro

**WORD COUNT CERTIFICATION**

I hereby certify that this Memorandum of Law was produced on a computer using Microsoft Word 365 and does not exceed 8,750 words, as determined by the computer software's word-count function, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, pursuant to Local Civil Rule 7.1(c).

Dated: October 26, 2026
New York, New York

/s/ *Kaitlin D. Shapiro*
Kaitlin D. Shapiro